ROBERT WISNIEWSKI
ROBERT WISNIEWSKI P.C.
17 State Street, Suite 820
New York, New York 10004
Tel.: (212) 267-2101
*Attorneys for Plaintiffs*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| JAVIER MARTE and ANDY MORENO on behalf of themselves and on behalf of all others similarly situated,<br><br>Plaintiffs,<br><br>-against-<br><br>CASA TUA NYC, LLC, JIL JANITORIAL SERVICES & SOLUTIONS, LLC, MIKY GRENDENE, LETICIA GRENDENE, and WILKIN ALEJANDRO LEONARDO,<br><br>Defendants. | **Docket No.:**<br><br>**JURY TRIAL DEMANDED** |

**<u>COMPLAINT</u>**

Plaintiffs Javier Marte ("<u>Marte</u>") and Andy Moreno ("<u>Moreno</u>") (Marte and Moreno are, collectively, "<u>Plaintiffs</u>") on behalf of themselves and on behalf of all others similarly situated, by and through their attorneys, Robert Wisniewski P.C., as and for their Complaint against Casa Tua NYC, LLC ("<u>Casa Tua</u>"), JIL Janitorial Services & Solutions, LLC ("<u>JIL</u>") (Casa Tua and JIL are, collectively, the "<u>Corporate Defendants</u>"), Miky Grendene ("<u>Miky</u>"), Leticia Grendene ("<u>Leticia</u>"), and Wilkin Alejandro Leonardo ("<u>Leonardo</u>"), state as follows:

## NATURE OF THE ACTION

1. Plaintiffs bring this action on behalf of themselves and on behalf of all others similarly situated to recover unpaid wages, unpaid overtime wages, and liquidated damages, as well as reasonable attorneys' fees and costs under the Fair Labor Standards Act of 1938, as amended (29 U.S.C. § 201 *et seq.*) ("FLSA"); Articles 6 and 19, and §§ 191 and 198-b of the New York Labor Law ("NYLL"), various wage orders promulgated by the New York State Department of Labor and codified in 12 N.Y.C.R.R. §§ 137-143, and the common law of the State of New York.

## PARTIES, JURISDICTION AND VENUE

2. At all relevant times, Marte, a former employee of the Corporate Defendants, was and is a resident of the State of New York, Bronx County.

3. At all relevant times, Moreno, a former employee of the Corporate Defendants, was and is a resident of the State of New York, Bronx County.

4. At all relevant times, upon information and belief, Casa Tua was and is a foreign limited liability company organized under, and existing by virtue of, the laws of the State of Florida, and having its principal place of business at 20 East 76th St., New York, NY 10021.

5. At all relevant times, upon information and belief, JIL was and is a foreign limited liability company organized under, and existing by virtue of, the laws of the State of Florida, and having its principal place of business at 10227 NW 62nd Street, Miami, FL 33178.

6. At all relevant times herein, upon information and belief, Miky was and is a resident of the State of Florida, Miami-Dade County.

7. At all relevant times herein, upon information and belief, Leticia was and is a resident of the State of Florida, Miami-Dade County.

8. At all relevant times herein, upon information and belief, Leonardo was and is a resident of the State of Florida, Miami-Dade County.

9. Miky and Leticia are the owners, members, officers, and/or managers of Casa Tua, and as the managing members are individually responsible for unpaid wages under the New York Limited Liability Company Law.

10. Leonardo is the owner, member, officer, and/or manager of JIL, and as the managing-member is individually responsible for unpaid wages under the New York Limited Liability Company Law.

11. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. §1331, in that this action arises under the FLSA. This Court has jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367 in that they form part of the same case or controversy.

12. At all relevant times, Defendants engaged in an enterprise whose annual volume of sales made or business done is not less than $500,000, the activities of which affect interstate commerce in that the employees of the Defendants employ, handle, and sell goods that have been moved in or produced for interstate commerce (food, utensils, chairs, tables, and other items), and the Defendants are thus employers subject to the jurisdiction of the FLSA.

13. This Court has personal jurisdiction over Casa Tua pursuant to CPLR § 302(a), New York's long arm statute and because it is registered to do business within the State of New York.

14. This Court has personal jurisdiction over JIL pursuant to CPLR § 302(a), New York's long arm statute because JIL maintained substantial contacts with the forum state by transacting business within New York. Specifically, JIL contracts to supply dishwashing and other cleaning services in the state.

15. This Court has personal jurisdiction over Miky pursuant to CPLR § 302(a), New York's long arm statute. Miky maintained substantial contacts with the forum state by regularly doing business and deriving substantial revenue from goods used or consumed in New York. Specifically, Miky owned Casa Tua, a restaurant with its principal place of business located in New York, and actively managed it from Florida.

16. This Court has personal jurisdiction over Leticia pursuant to CPLR § 302(a), New York's long arm statute. Leticia maintained substantial contacts with the forum state by regularly doing business and deriving substantial revenue from goods used or consumed in New York. Specifically, Leticia owned Casa Tua, a restaurant with its principal place of business located in New York, and actively managed it from Florida.

17. This Court has personal jurisdiction over Leonardo pursuant to CPLR § 302(a), New York's long arm statute because Leonardo maintained substantial contacts with the forum state by engaging in a persistent course of conduct in New York. Leonardo owned and managed JIL and regularly came to New York to meet with Plaintiff Marte to give directives regarding Plaintiff's and other dishwashers' business.

18. Venue is proper pursuant to 28 U.S.C. § 1391(b), because substantial events giving rise to Plaintiffs' claims occurred in this district.

## **JURY DEMAND**

19. Plaintiffs demand a trial by jury of all issues so triable in this action.

## FACTUAL BACKGROUND

20. Marte was hired by Defendants in November 2024 to work as a supervisor in the dishwashing and polishing section at Casa Tua, an Italian restaurant located at 20 East 76th St., New York, NY 10021.

21. Moreno was hired by Defendants on November 28, 2024, to work as a dishwasher in the dishwashing and polishing section at Casa Tua.

22. Although Plaintiffs worked at Casa Tua, their employer was technically JIL, a staffing agency that had a contract with Casa Tua to provide workers for dishwashing and other cleaning jobs at the restaurant. Casa Tua paid JIL for the services provided by Marte and other workers, and then JIL paid the workers their wages.

23. Marte was a supervisor in the dishwashing and polishing section of Casa Tua, but his authority was limited. However, Chef Douglas Santi, an employee of Casa Tua, held ultimate authority over this section and served as Marte's and other dishwashers' and cleaners' manager.

24. Plaintiffs also regularly dealt with Leonardo, the owner of JIL, who passed along messages from Miky and Leticia as managers of Casa Tua. Casa Tua made the decisions about hiring and firing employees, and then directed JIL and Leonardo to carry out those decisions.

25. The dishwashing and polishing section at Casa Tua had about 24 workers, including Plaintiffs. There was a high turnover rate because Defendants did not pay workers correctly, and at least one new employee was hired each week. It is believed that since October 2024, Defendants employed more than 50 of these workers.

26. Defendants engaged in a scheme whereby they paid Plaintiffs and all others similarly situated only at the regular rate for hours they worked over 40.

27. During his first six weeks of employment, Marte typically worked 10 to 12 hours a day, Monday through Saturday, and sometimes on Sundays, for a total of 60 to 70 hours per week. Marte was paid an hourly wage. His pay rate fluctuated between $22 and $23 per hour. He usually worked from 7:00 a.m. to between 5:00 and 7:00 p.m. He was only allowed to take a 10-minute paid break to eat.

28. In the subsequent months leading up to his termination, Marte worked 8 to 10 hours a day, Monday through Saturday, and sometimes on Sundays, for a total of 48 to 60 hours per week. His usual work hours were from 7:00 a.m. to 3:00-5:00 p.m.

29. In or about February 2025, Marte was terminated under a pretext that he had a disagreement with one of the dishwashers, who complained to Casa Tua. Casa Tua decided to fire Marte, and Leonardo conveyed their decision to Marte.

30. Moreno was paid $16 per hour throughout his employment, which was below the 2025 minimum wage in New York City. Moreno worked Monday through Friday, 6 to 8 hours a day, for a total of 30 to 35 hours per week. His usual work hours were from 6:00 a.m. to 12:00-2:00 p.m. Moreover, he was not paid for the first week of work at all.

31. On April 13, 2025, Moreno was suddenly fired without any explanation.

32. Throughout their employment, Plaintiffs were paid through Zelle, a service that allows direct bank account transfers using an email address or phone number. They did not receive any pay stubs, making it difficult for them to calculate and review their wages.

33. In total, Marte is owed at least $14,781.92 in overtime wages, damages, plus liquidated damages and interest.

34. In total, Moreno is owed at least $11,442.10 in unpaid minimum wages, damages, plus liquidated damages and interest.

35. The FLSA states that workers must be paid time and a half at the actual regular rate for the hours of work over 40 in a workweek.

36. The NYLL states that workers must be paid their promised wages and at least a minimum wage.

37. The relevant wage order promulgated by the New York Department of Labor requires employers to pay its employees at the rate of 1½ times their regular rate of pay for all hours worked over 40 in a workweek.

38. At all relevant times, Plaintiffs were employees of Defendants and Defendants were their employers within the meaning of both the FLSA and the NYLL.

39. From the beginning of their employment until about April 2025, Defendants engaged in a scheme where they did not pay Marte and all others similarly situated for all hours they worked at the proper overtime wage and did not pay Moreno and others similarly situated at a minimum wage rate for hours they worked and for the overtime hours.

***Defendants' Failure to Provide Wage Notices and Wage Statements***

40. Plaintiffs, including all others similarly situated, were not given a wage notice when they were hired.

41. Plaintiffs, including all others similarly situated, were also not given wage statements as required by the NYLL.

42. In failing to provide proper wage statements and notices, Defendants have failed to comply with the law in a manner that clearly entails a concrete risk of harm to an interest identified by the New York State legislature. Defendants' failure to provide such notices

trivializes the importance of these notices in protecting Plaintiffs' interest in ensuring proper pay. Despite Defendants' conduct, there is a reason why the New York legislature concluded that enacting wage notice provisions would "far better protect workers' rights and interests" than existing penalties. *See* N.Y. Spons. Mem., 2010 S.B. 8380. Written notices function as a means of apprising employees of their rights and of their employer's obligations towards them, empowering employees to advocate for themselves. Deprivation of such notices necessarily entails a significant risk of harm to the employees' concrete interest in being paid properly and timely.

43. Here, Defendants' failure goes beyond generating a risk of harm to Plaintiffs and all others similarly situated. Defendants' conduct actually harmed Plaintiffs and all others similarly situated. Defendants' failure to provide paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest Defendants' calculations, allowed Defendants to hide their wrong-doing, and necessitated the current litigation to vindicate the rights of Plaintiffs and all others similarly situated. This conduct ensured Defendants' ability to further delay providing proper compensation to low wage earners entitled to protection under federal and state law. Moreover, Defendants' failure to provide wage notices allowed Defendants to hide the proper frequency of pay to employees. Defendants' failure to provide a wage notice to employees allowed Defendants to hide their responsibility and deprive employees of timely compensation.

44. Plaintiffs and all others similarly situated were never given wage notices and statements, which hindered their ability to calculate how much in wages they were owed by Defendants.

45. The injury of not receiving pay was directly linked to the lack of wage notices and wage statements, as Plaintiffs and all others similarly situated were not informed of their entitlement to certain pay.

46. Proper wage notices and statements would have informed Plaintiffs and all others similarly situated of their right to certain pay, enabling them to address any discrepancies and seek appropriate compensation.

47. Due to Defendants' failure to provide legally mandated notices such as earning statements and wage notices, Defendants were able to hide their wrongdoing from employees, and continue to attempt to hide their wrongdoing necessitating the current litigation. The failure to provide NYLL notices continues to result in delayed payment of all proper wages owed to Plaintiffs and all others similarly situated.

***Defendants' Failure to Pay Proper Wages was Willful***

48. Defendants as employers have certain statutory obligations towards their employees, including paying employees for all of the hours they worked, paying the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week, and making, keeping, and preserving proper payroll records.

49. Defendants were aware of their requirement to pay Plaintiffs and all others similarly situated for each hour worked, and to pay the overtime premium of one-and-a-half times their regular rate for each hour worked in excess of 40 per week.

50. Nevertheless, Defendants failed to pay Plaintiffs and all others similarly situated their proper wages, including overtime wages.

51. Defendants knowingly and willfully operated their business with conscious a policy of wage violations which included wage theft in violation of the NYLL.

52. As such, the various violations of the law which are alleged herein were committed intentionally and willfully by Defendants.

53. At a minimum, Defendants failed to take the necessary steps to ascertain their duties with respect to the payment of wages to their employees.

***Facts Relating to Defendants as Joint Employers***

54. At all relevant times herein, Casa Tua had the ultimate authority over the hiring and firing of employees which would then direct JIL and its owner, Leonardo, to carry out those directives.

55. For example, the decision to terminate Plaintiffs' employment originated from Casa Tua, even though JIL and Leonardo communicated the termination to Plaintiffs.

56. The management at Casa Tua maintained control over the work schedule at the restaurant, including setting Plaintiffs' work schedule. While Marte could set the work hours for those he supervised, Casa Tua's management retained the ultimate authority to approve or disapprove those schedules.

57. Casa Tua also held the ultimate authority to approve or disapprove the hourly rates of employees.

58. Upon information and belief, Casa Tua maintained the employment records of Plaintiffs and all others similarly situated.

59. Casa Tua established the rules of conduct for all employees at the restaurant, and all employees, including Plaintiffs, were required to wear uniforms provided by Casa Tua. Disciplinary actions involving employees were handled by Casa Tua.

60. All equipment and tools utilized at the restaurant were owned and provided by Casa Tua.

61. Although Plaintiffs were technically employed through JIL, they exclusively performed work at the Casa Tua restaurant.

62. Despite being employed by JIL, Plaintiffs and other workers from JIL worked closely with Casa Tua's direct employees and were an essential and regular part of Casa Tua's workforce.

63. At all relevant times herein, Miky and Leticia were and still are the owners, directors, officers, managing-members, and/or majority shareholders of Casa Tua and have exercised financial and operational control over Casa Tua.

64. At all relevant times herein, Casa Tua was and is controlled by Miky and Leticia.

65. At all relevant times herein, Miky and Leticia conducted business as Casa Tua.

66. At all relevant times herein, Miky and Leticia acted for and on behalf of Casa Tua, with the power and authority vested in them as the owners, officers, agents, and employees of Casa Tua, and acted in the course and scope of their duty and function as the owners, managers, agents, and officers of Casa Tua.

67. At all relevant times herein, upon information and belief, Miky and Leticia, in conjunction with JIL, managed and handled the payroll and/or payroll calculations and issuing wages to Plaintiffs and all others similarly situated.

68. Upon information and belief, Miky and Leticia, in conjunction with JIL, had operational control over the conditions of employment of Plaintiffs and all others similarly situated, including their hiring and firing, their work schedule, the rate and method of payment of their wages, and the maintenance of their employment records.

69. At all relevant times herein, Leonardo was and still is the owner, director, officer, managing-member, and/or majority shareholder of JIL and has exercised financial and operational control over JIL.

70. At all relevant times herein, JIL was and is controlled by Leonardo.

71. At all relevant times herein, Leonardo conducted business as JIL.

72. At all relevant times herein, Leonardo acted for and on behalf of JIL, with the power and authority vested in him as the owner, officer, agent, and employee of JIL, and acted in the course and scope of his duty and function as the owner, manager, agent, and officer of JIL.

73. At all relevant times herein, Leonardo, in conjunction with Casa Tua, managed and handled the payroll and/or payroll calculations and issuing wages to Plaintiffs and all others similarly situated.

74. Leonardo, in conjunction with Casa Tua, had operational control over the conditions of employment of Plaintiffs and all others similarly situated, including their hiring and firing, their work schedule, the rate and method of payment of their wages, and the maintenance of their employment records.

75. At all relevant times, Miky and Leticia exercised operational control over Casa Tua and over Marte, Moreno, and all employees of Casa Tua and JIL.

76. At all relevant times, Leonardo exercised operational control over JIL and all employees of JIL.

77. As a matter of economic reality, all Defendants are joint employers of Plaintiffs and all others similarly situated; and, as a result, Defendants, individually and collectively, and jointly and severally, are liable for all claims made herein.

## COLLECTIVE ACTION ALLEGATIONS

78. Plaintiffs bring this action on behalf of themselves and all other persons who were or are employed by the Corporate Defendants as dishwashers, polishers, and supervisors but did not receive the compensation required by the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq*. in respect to their work for Defendants.

79. Upon information and belief, this class of persons consists of not less than fifty (50) persons.

80. There are questions of law and fact common to the class specifically whether the employment of Plaintiffs by the Corporate Defendants is subject to the jurisdiction and the wage and overtime requirements of the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq*. Only the amounts of individual damages sustained by each class member will vary.

81. Plaintiffs and Defendants' other employees are similarly situated insofar as Defendants instituted a policy not to pay Plaintiffs and other employees for all overtime hours worked at the required premium time and a half of the wage actually made.

82. Plaintiffs bring FLSA claims for relief herein on behalf of themselves individually and all persons similarly situated as a collective action pursuant to the FLSA, in respect to all claims that Plaintiffs and all persons similarly situated have against Defendants as a result of the Corporate Defendants' violation under the FLSA and the federal wage orders codified in 29 C.F.R. § 552 *et. seq*.

## CLASS ACTION ALLEGATIONS UNDER RULE 23 FOR VIOLATIONS OF THE NYLL

83. Plaintiffs bring this action on behalf of themselves and all others similarly situated who were or are employed by Defendants as dishwashers, polishers, and supervisors but did not receive the compensation required by the NYLL. The proposed class is as follows:

a. All non-exempt employees of Defendants who were or are employed as dishwashers, polishers, and supervisors at the Casa Tua restaurant located at 20 East 76th St., New York, NY 10021 within six years and seven months from the date of the filing of this action (to account for Governor Andrew Cuomo's orders tolling the New York statutes of limitations by seven months).

b. Excluded from the proposed class are those employees of Defendants:

i. Who are exempt under the NYLL, including without limitation Defendants' corporate officers, managers and administrative personnel; and

ii. Who have signed a valid general release as part of a separate court or administrative proceedings.

84. This class of persons consists of several hundred persons, and the class is thus so numerous that joinder of all members is impracticable under the standards of Fed. R. Civ. P. 23(a)(1). The exact number of members of the class who were and are dishwashers, polishers and supervisors, their identity and addresses can be easily ascertainable from Defendants' payroll and time records and other surveillance and productivity data in Defendants' possession.

85. Moreover, damages suffered by each putative member may be so small that prosecuting an individual claim may not be economical or practicable.

86. Plaintiffs are members of the class.

87. There are questions of law and fact common to the class which predominate over any questions affecting only individual members, specifically:

a. whether the employment of Plaintiffs and other workers by the Defendant is subject to the jurisdiction and the wage and overtime requirements of the NYLL and the wage orders promulgated thereunder; and

b. whether Defendants' failure to pay their workers the proper wages and overtime wages violated NYLL's minimum wage, overtime wage, and promised wage.

c. Only the amounts of individual damages sustained by each class member will vary.

88. The claims of Plaintiffs are typical of the above-described class in that all of the members of the class have been similarly affected by the acts and practices of Defendants. The damages sought by Plaintiffs are typical of the damages that may be sought by the class.

89. Plaintiffs will fairly and adequately protect the interests of the members of the class, in that their interests are not adverse to the interests of the other members of the class.

90. In addition, Defendants have acted or refused to act on grounds that apply generally to the class, so that declaratory relief is appropriate respecting the class as a whole under Fed. R. Civ. P. 23 (b)(2).

91. A class action is superior to other available methods for the fair and efficient adjudication of the controversy under the standards of Fed. R. Civ. P. 23 (b)(3).

92. Plaintiffs bring the second, third, and fourth claims for relief herein on behalf of themselves individually and on behalf of all persons similarly situated as a class action pursuant to Rule 23, in respect to all claims that Plaintiffs and all persons similarly situated have against Defendants for violations of the NYLL and the wage orders codified in 12 N.Y.C.R.R. §§ 137-143.

## FIRST CLAIM FOR RELIEF
**(Unpaid Wages and Overtime Wages Under the FLSA)**
***Against all Defendants***

93. Plaintiffs repeat and reallege each and every previous allegation as if fully set forth herein.

94. Plaintiffs and all others similarly situated are persons covered by, and/or intended to benefit from, the provisions of the FLSA with respect to their work for the Corporate Defendant.

95. Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, bring this claim for relief pursuant to the applicable provisions of the FLSA, 29 U.S.C. § 206 and § 207, and the Wage Orders issued under the FLSA at 29 C.F.R. § 500 *et seq*., under which Plaintiffs and all others similarly situated were entitled to a minimum wage and an overtime hourly wage of time and one-half their regular hourly wage for all hours worked in excess of forty hours per week.

96. Pursuant to the FLSA, Plaintiffs and all others similarly situated were entitled to certain overtime wages, which the Corporate Defendants intentionally and willfully failed to pay in violation of such laws.

97. Plaintiffs and all others similarly situated regularly worked in excess of 40 hours per week for the Corporate Defendants, but did not receive the proper overtime wages to which they were entitled for all hours worked.

98. Accordingly, Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, seek a judgment for unpaid overtime wages, such sums to be determined based upon an accounting of the hours worked by, and wages actually paid to, Plaintiffs and all others similarly situated, along with an award of liquidated damages, interest, attorneys' fees, and costs, as provided for by the FLSA.

**SECOND CLAIM FOR RELIEF**
**(Unpaid Wages and Overtime Wages Under the NYLL)**
***Against all Defendants***

99. Plaintiffs repeat and reallege each and every previous allegation previously set forth.

100. Plaintiffs and all others similarly situated are persons covered by, and/or intended to benefit from, the provisions of the NYLL with respect to their work for Defendants.

101. Pursuant to the NYLL Articles 6 and 19, Labor Law §198, and the Wage Orders issued under NYLL at 12 N.Y.C.R.R. §§ 137-143, Plaintiffs and all others similarly situated were entitled to certain regular wages, and overtime wages, all of which Defendants intentionally and willfully failed to pay in violation of such laws.

102. Plaintiffs and all others similarly situated regularly worked in excess of 40 hours per week for Defendants, but did not receive the proper wages and overtime wages to which they were entitled for all hours worked.

103. Wherefore Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, seek a judgment against all Defendants for unpaid regular and overtime wages which should have been paid, but were not paid, pursuant to the NYLL and the Wage

Orders issued thereunder and the other provisions of the NYLL; the total amount of such unpaid wages to be determined at trial upon an accounting of the hours worked by, and wages paid to, Plaintiffs and all others similarly situated, along with an award of liquidated damages, attorneys' fees, interest and costs as provided under NYLL §198 and §663.

**<u>THIRD CLAIM FOR RELIEF</u>**
**(Wage Notice Violation Under the NYLL)**
***Against all Defendants***

104. Plaintiffs repeat and reallege each and every allegation previously set forth.

105. NYLL § 195.1 mandates as of 2015 that, at the time of hire and when a wage rate is changed, each employee employed by Defendants receive for signature a Wage Notice, which had to contain the following wage information: (i) the basis of the employee's wage rates e.g., by the hour, shift, day, week, salary piece commission or otherwise; (ii) the overtime rate of pay, if the employee is subject to overtime regulations; (iii) whether the employer will claim allowances such as tips, meals, and/or lodging against the minimum wage; (iv) the employer's name and any "doing business as" names; (v) the employer's address and mailing address, if different; and (vi) the employer's telephone number.

106. Plaintiffs and all others similarly situated never received for signature the Wage Notice and never received any other paystubs or documents which might show the information required by NYLL § 195.1.

107. Accordingly, Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, seek damages allowed by the statute for himself as well as attorney fees, costs and disbursements.

## FOURTH CLAIM FOR RELIEF
**(Wage Statement Violation Under the NYLL)**
***Against all Defendants***

108. Plaintiffs repeat and reallege each and every allegation previously set forth.

109. Pursuant to NYLL § 195.3 and the Wage Order §142-3.8, employers must provide an accurate wage statement with each payment of wages. Wage statements must include, among other information "the dates of work covered by that payment of wages; name of employee; address and phone number of employer; rate or rates of pay and basis thereof" and, where applicable, the overtime rate of pay.

110. In violation of the NYLL and the Wage Order, Defendants did not furnish Plaintiffs and all others similarly situated with wage statements that show the employee's rate or rates of pay, the number of hours worked, or recorded the proper pay rate for the overtime hours of Plaintiffs and all others similarly situated.

111. Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, seek damages allowed by the statute.

## PRAYER FOR RELIEF

**WHEREFORE**, it is respectfully requested that the Court assume jurisdiction herein and thereafter Plaintiffs, on behalf of themselves and on behalf of all others similarly situated, demand a trial by jury and judgment against all Defendants as follows:

A. A declaratory judgment that the actions, conduct and practices of Defendants complained of herein violate the laws of the United States and the State and City of New York;

B. An award of damages in an amount to be determined at trial, plus pre-judgment interest, to compensate Plaintiffs and all others similarly situated for all monetary and/or economic damages;

C. An award of liquidated damages pursuant to the FLSA and NYLL for underpaid and illegally retained amounts; and

D. An award of costs that Plaintiffs have incurred in this action, as well as the reasonable attorneys' fees of Plaintiffs to the fullest extent permitted by law.

Together with such other and further relief that the Court deems just and proper.

Dated: New York, NY
June 6, 2025

ROBERT WISNIEWSKI P.C.

By: *<u>/s/ Robert Wisniewski</u>*
Robert Wisniewski
*Attorneys for Plaintiffs*
17 State Street, Suite 820
New York, NY 10004
(212) 267-2101